UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: BELENDA M. LANE,                                    No. 19-11901-j13

Debtor.

---

WBL SPE II, LLC,

      Plaintiff,

v.                                                        Adversary No. 19-1079-j

APSCO, INC., JESSE LANE PROPERTIES, LLC,

LANE LAS CRUCES, LLC, and BELENDA M. LANE,

    Defendants.


**MEMORANDUM OPINION**

      THIS MATTER is before the Court on Plaintiff's Partial Motion for Summary Judgment

("Summary Judgment Motion"). *See* Docket No. 27. Defendants APSCO, Inc., Jesse Lane

Properties, LLC, and Lane Las Cruces, LLC filed a response[1] to the Summary Judgment Motion

("Response"), and Plaintiff replied ("Reply"). *See* Docket Nos. 28, 32. After consideration of the

arguments and evidence presented by the parties, the Court will deny Plaintiff's Summary

Judgment Motion for the reasons set forth below.

## I.    SUMMARY JUDGMENT STANDARDS

      Summary judgment will be granted when the movant demonstrates that there is no

genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See*

Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Rule 7056, Fed.R.Bankr.P.

---

[1] Defendant Belenda Lane did not respond to the Summary Judgment Motion.

"[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only if the properly supported material facts entitle the requesting party to judgment as a matter of law is it appropriate for the Court to grant summary judgment. *Id.* The Court evaluates a request for summary judgment by drawing "all reasonable factual inferences in favor of the non-moving party." *Genberg v. Porter,* 882 F.3d 1249, 1253 (10th Cir. 2018). Thus, summary judgment is appropriate "if the evidence points only one way and no reasonable inferences could support the non-moving party's position." *Id.*

In opposing a motion for summary judgment, a party may establish the existence of a genuinely disputed material fact by: 1) citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers or other materials" in the record; or 2) "showing that the materials cited [by the moving party] do not establish the absence ... of a genuine dispute," or that the moving party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B). A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Id.*

New Mexico Local Bankruptcy Rule 7056–1(c) provides that the party opposing summary judgment must: 1) list the material facts as to which the party contends a genuine fact exists; 2) "refer with particularity to those portions of the record upon which the opposing party relies;" and 3) "state the number of the movant's fact that is disputed." NM LBR 7056–1(c).

Case 19-01079-j    Doc 46    Filed 08/05/21    Entered 08/05/21 15:11:24 Page 2 of 23

Properly supported material facts in the movant's motion are "deemed admitted unless specifically controverted" by the party opposing summary judgment. NM LBR 7056–1(c).

## II.     FACTS NOT SUBJECT TO GENUINE DISPUTE

After review of the documents presented by Plaintiff and Defendants, including an affidavit by Jesse Lane, as well as the Summary Judgment Motion, Response, and Reply, the Court finds that the following facts are not in genuine dispute.

**The Parties**

1.     Plaintiff, WBL SPE II, LLC ("Plaintiff") is a New York limited liability company. [First Amended Complaint ("FAC"), ¶ 1; Answer by APSCO, Inc., Jesse Lane Properties, LLC, and Lane Las Cruces, LLC ("Answer"), ¶ 1 (admitted); Ex. T].

2.     World Business Lenders, LLC ("WBL") is a New York limited liability company [Ex. U]. Although WBL was the lender when the loan documents were executed, Plaintiff was the holder of the Notes and Mortgages when Plaintiff filed the complaint in the state court that is the basis of this proceeding. [Ex. RR, SS, TT and UU]

3.     Defendant APSCO, Inc. ("APSCO") is a New Mexico corporation. [FAC, ¶ 2; Answer, ¶ 1(admitted)].

4.     Defendant Jesse Lane Properties, LLC ("JLP") is a New Mexico limited liability company. [FAC, ¶ 3; Answer, ¶ 1(admitted)].

5.     Defendant Lane Las Cruces, LLC ("Lane Las Cruces")[2] is a New Mexico limited liability company. [FAC, ¶ 4; Answer, ¶ 1(admitted)].

---

[2] The Court will refer to APSCO, Lane Las Cruces, and JLP collectively as "the Entities."

6.     Defendant Belenda Lane is an individual and the debtor in the underlying chapter 13 bankruptcy case, case number 19-11901-j13, which is pending. [FAC, ¶ 5; Answer, ¶ 1 (admitted); Case No. 19-11901-j13, Doc. 1].

**The JLP Operating Agreement**

7.     Under JLP's Operating Agreement (the "Operating Agreement") effective at the time of the transactions at issue, Ms. Lane and Jesse Lane are managers of JLP. [Ex. DD, p. 8, § 6.2)].

8.   The Operating Agreement provides:

> if more than one [m]anager is then serving, notwithstanding that any reference herein to the [m]anagers may be stated in the plural, either shall have the power, without the consent of the other, to take any action hereunder that is within the authorized powers of the [m]anager hereunder.

[Ex. DD, p. 8, § 6.2 (A) (2)].

9.     The Operating Agreement gives Ms. Lane, as a manager, the authority to borrow money "for [JLP]" and to encumber and grant security interests against its property to secure loans for JLP. [Ex. DD, p. 9, § 6.3(A)(2)].

10.     WBL received a copy of the Operating Agreement prior to closing of the loans and mortgages at issue. [MSJ, ¶ 33; Response, ¶ 19].

**The Notes and Mortgages**

11.     On September 23, 2016, Ms. Lane signed a document entitled Business Promissory Note and Security Agreement ("Note 1") in the original principal amount of $329,000.00 in favor of WBL. [Ex. A].

12.     APSCO and JLP were named as the borrowers in Note 1. [Ex. A].

13.     Ms. Lane signed Note 1 as "Corp. Sec" of both APSCO and JLP. [Ex. A].

-4-

14. In connection with Note 1, Ms. Lane signed a "Business Loan Purpose Affidavit" as "Corp. Sec." of JLP stating that the loan proceeds "will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods." [Ex. I].

15. Also on September 23, 2016, Ms. Lane executed a mortgage ("Mortgage 1"), which also contained an assignment of rents and a security agreement granting a security interest in fixtures in favor of WBL, granting WBL a mortgage on real property, a lien against rents, and a lien against fixtures affixed to the property as security for repayment of the debt evidenced by Note 1. [Ex. B].

16. Ms. Lane signed Mortgage 1 as a manager of JLP. [Ex. B].

17. By its terms, Mortgage 1 encumbers the real property commonly known as 406 Fairgrounds Rd., Alamogordo, NM 88311, all improvements located thereon, and all other property described in such Mortgage 1 (collectively, the "Property"), and was recorded with the Otero County, New Mexico Clerk's Office on September 27, 2016 as Instrument No. 201607676. [Ex. B].

18. WBL subsequently transferred Note 1 to Plaintiff and Plaintiff was the holder thereof on the date this case was filed in the state court. [Ex. SS, TT and UU].

19. Mortgage 1 was subsequently assigned by WBL to WBL SPO I, LLC on April 13, 2017. [Ex. C].

20. WBL SPO I, LLC subsequently assigned Mortgage 1 to WBL SPE II on June 29, 2017. [Ex. D].

21. After this case was filed in the state court, WBL SPE II, LLC assigned Mortgage 1 to WBL SPO I, LLC on October 24, 2019. [Ex. E].

22.     On November 11, 2016, Ms. Lane executed another document entitled Business Promissory Note and Security Agreement ("Note 2") in the original principal amount of $40,000.00 in favor of WBL. [Ex. J].

23.     Ms. Lane signed Note 2 as "Corp. Sec." of APSCO and JLP. [Ex. J, p. 7].

24.     In connection with Note 2, Ms. Lane signed a "Business Loan Purpose Affidavit" as "Corp. Sec." of JLP stating that the proceeds of Note 2 "will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods." [Ex. S].

25.     On November 14, 2016, as security for repayment of Note 2, Ms. Lane signed a mortgage ("Mortgage 3")[3], which also contained an assignment of rents and security agreement, in favor of WBL, granting WBL a mortgage on the Property. [Exh. K].

26.     Mortgage 3 was recorded with the Otero County, New Mexico Clerk's Office on November 15, 2016 as Instrument No. 201609081 ("Mortgage 3"). [Ex. K].

27.     Ms. Lane signed Mortgage 3 as manager of JLP. [Ex. K, p. 11].

28.     WBL subsequently transferred Note 2 to Plaintiff, and Plaintiff was the holder thereof on the date this case was filed in the state court. [Ex. RR, TT and UU].

29.     WBL subsequently assigned Mortgage 3 to WBL SPO I, LLC on April 6, 2017. [Ex. L].

30.     WBL SPO I, LLC subsequently assigned Mortgage 3 to WBL SPE II on June 29, 2017. [Ex. M].

_____

[3] Plaintiff refers to this mortgage as "Mortgage 3" because another mortgage was executed on the same day to further secure Note 2. That mortgage, referred to as "Mortgage 2" by Plaintiff, is not at issue in Plaintiff's Summary Judgment Motion. For ease of reference in this Memorandum Opinion and Order and future proceedings, the Court will adopt the parties' nomenclature of the various instruments at issue in this adversary proceeding and bankruptcy case 19-11901.

31.     After this case was filed in the State Court, WBL SPE II, LLC assigned Mortgage 3 to WBL SPO I, LLC. [Ex. N].

32.     After WBL inquired about Ms. Lane's authority to enter into the Notes and Mortgages on behalf of the Entities, WBL was provided an attorney opinion letter purportedly issued by a law firm in Albuquerque (the "Purported Opinion Letter"). [Ex. CC].

33.     Notes 1 and 2 (hereinafter referred to together as the "Notes") granted a security interest in favor of WBL in all collateral listed on the UCC Financing Statement filed by Plaintiff. [Ex. A, J & V].

34.     Ms. Lane signed a letter authorizing WBL to disburse $3,874.90 to the Otero County Treasurer from Note 2 funds to bring property taxes owed by JLP current on the Property. Ex. R. Beneath her signature, Ms. Lane indicated that she was the "Corp. Sec" of APSCO and JLP. [Ex. R].

35.     WBL wired the loan proceeds of the Notes, less fees and adjustments, to an account at BBVA Compass Bank. Ex. Q, W, H, Z. [MSJ ¶ 46 and Response ¶ 25].

36.     JLP was listed as the beneficiary of the account to which the loan proceeds were wired. [Ex. W, Z].

**Default on the Notes**

37.     APSCO and JLP failed to make the payments required by the Notes as the payments became due. according to the terms of the Notes. Note 1 matured on September 28, 2018, at which time according to the terms of the Notes, all unpaid principal, interest, and other charges were due and owing in full. Note 1 was not paid in full per the terms of Note 1. [Ex. PP, QQ].

38.     Notes 1 and 2 have cross-default provisions stating that a default under the terms of one of the Notes is a default under the terms of the other Note. [Ex. K, p. 25-27].

39.     WBL sent JLP a notice of default on January 11, 2017, informing them of their default and demanding that the amounts due and owing be paid in full or WBL would exercise any and all rights and remedies under the Notes and applicable law. [Ex. PP].

40.     WBL then sent a final notice of default through counsel on March 16, 2017, making final demand and stating that if the debt was not paid in full, WBL would seek judicial foreclosure of the Mortgages. [Ex. QQ]

41.     The Entities and Ms. Lane did not pay the amounts due and owing according to the terms of the Notes. [FAC, ¶ 23; Belenda Lane Answer, ¶ 23 (admitting "certain payments were not made according to the terms of the" Notes); Answer, ¶ 15 (admitting the Entities have not paid the amounts due under the Notes)].

**Plaintiff's Complaint for Breach of Contract and Adversary Proceedings**

42.     The present adversary proceeding was initiated when Plaintiff filed a Complaint for Breach of Contract and Foreclosure against the Entities, Ms. Lane and Lane Las Cruces on September 19, 2017 in the Third Judicial District Court, Dona Ana County, New Mexico. The case was removed to the Bankruptcy Court after Ms. Lane filed a petition for bankruptcy relief. [AP 19-1079, Doc. 1].

43.     In this case, the Entities plead several affirmative defenses: (a) failure to state a claim upon which relief can be granted; (b) fraud/collusion; and (c) lack of due diligence. [Answer, pp. 3-4, ¶¶ A-C].

44.     The basis for the Entities' affirmative defenses is their assertion that Ms. Lane did not have authority to execute the loan documents on behalf of APSCO, Lane Las Cruces, and/or JLP. [Ex. OO, LL and MM; Ex. NN, KK and JJ].

45.     The current owner of the Notes and Mortgages, WBL SPO I, LLC, filed a dischargeability complaint against Ms. Lane in this Court, commencing adversary proceeding No. 19-1087, and that case is stayed pending resolution of adversary proceeding 19-1079.[4]

46.     The Mortgages provide that in the event of a default under the Notes, the mortgagee is entitled to foreclose its mortgage lien on the Property and to collect the rents from the Property and apply the proceeds of both to the unpaid balance of each Note. [Ex. B, K].

47.     The Notes and Mortgages provide that the note holder and mortgagee are entitled to recover its reasonable attorney fees and costs incurred in enforcing the Mortgages and collecting the Notes. [Ex. A, B, F, J, K, O].

48.     There is no evidence that there existed any condition precedent to Plaintiff's collection on the Notes and enforcement of the Mortgages that was not satisfied. The requirements for default notice prior to suit were satisfied. [Ex. PP, QQ; MSJ, ¶ 63; Response (not disputing this assertion)].

## III.     DISCUSSION

The Court will first address the scope of Plaintiff's Summary Judgment Motion, then discuss the law related to agency and whether Plaintiff has shown that the facts not in genuine dispute establish that Ms. Lane had actual or apparent authority to bind JLP. Finally, the Court will address Plaintiff's request that the Court deem facts established for trial.

---

[4] By stipulation, AP 19-1087 is stayed pending resolution of this adversary proceeding and the Court's findings of fact, conclusions of law, and rulings made in this adversary proceeding will have preclusive effect in AP 19-1087. AP 19-1087, Doc. 30.

**A.    The Scope of the Summary Judgment Motion**

In its First Amended Complaint ("FAC"), Plaintiff asserts claims against APSCO and JLP for breach of contract and seeks foreclosure of a mortgage. Plaintiff also asserts claims against Lane Las Cruces and Ms. Lane for breach of contract arising from their guarantee agreements.

In their answer to the FAC, the Entities state that Ms. Lane lacked authority to bind them and that she signed the Notes ultra vires. In addition, the Entities assert three affirmative defenses. First, they argue that Plaintiff failed to state a claim upon which relief can be granted. *See* Fed.R.Civ.P 12(b)(6). Second, they argue that "there may be such collusion between the Plaintiff and other parties as to render the actions complained of . . . fraudulent as to these [Entities]." Third, they contend that Plaintiff failed to exercise its legal duty to verify that the Entities approved the Notes and Mortgages.

In the Summary Judgment Motion, Plaintiff argued that the FAC is sufficient to state a claim under Rule 12(b)(6) and that the Entities have not offered any evidence to support their assertion of fraud. In their Response, the Entities did not address either defense. Moreover, it is undisputed that all the affirmative defenses rest on the Entities' position that Ms. Lane lacked actual and apparent authority to bind them. Hence, in resolving the Summary Judgment Motion, the Court will address those defenses only as they relate to Ms. Lane's authority.

In the Summary Judgment Motion, Plaintiff sought judgment that 1) JLP and APSCO are liable to Plaintiff for the balances owed on the Notes, 2) Lane Las Cruces, as guarantor, is liable to Plaintiff for the balances due on the Notes; and 3) Plaintiff is entitled to foreclosure of Mortgages 1 and 3 subject to the Court's determination of the amounts owed to Plaintiff. Plaintiff sought, in the alternative, a judgment that it is entitled to an in rem judgment against the

Property without prejudice to the Court's grant of money judgments against the Entities at a later time.

Plaintiff also stated in the Summary Judgment Motion that it is entitled to summary judgment that the Notes and Mortgages are valid and enforceable as to JLP, even if Ms. Lane did not have actual or apparent authority to bind APSCO or Lane Las Cruces. The Entities did not address this contention in their Response.

In Plaintiff's Reply, Plaintiff narrowed its request for relief. Plaintiff is now only asking that the Court enter summary judgment that "the Notes and Mortgages 1 and 3 are valid and enforceable as against JLP . . . and its Property, including that [Ms.] Lane had authority (either apparent or actual) to execute such contracts on behalf of JLP." Congruent with Plaintiff's request in the Reply, the Court will address only whether entitled to collect on the Notes or enforce the Mortgages against JLP.

## B.    Ms. Lane's Authority to Sign the Notes on Behalf of JLP

To establish that it is entitled to collect amounts due under the Notes, Plaintiff must show that it is the holder of the Notes, the Notes became due, and the amounts due have not been paid. *See Wilmington Sav. Fund Soc'y, FSB v. Hutchins,* No. CV 18-0346 JCH/JHR, 2020 WL 1910284, at *9 (D.N.M. Apr. 20, 2020), report and recommendation adopted sub nom. *Wilmington Sav. Fund Soc'y, FSB as Tr. of Residential Credit Opportunities Tr. III v. Hutchins*, No. CV 18-0346 JCH/JHR, 2020 WL 2764765 (D.N.M. May 28, 2020) (quoting *MTGLQ Inv'rs, LP v. Wellington*, No. CV 17-487, 2019 WL 4600196, at *7 (D.N.M. Sept. 23, 2019)); *see* NMSA 1978, §§ 55-3-301, 304, 402 (addressing enforcement of instruments). At the time the state court action was filed, Plaintiff was the holder of the Notes. Although Plaintiff's interest in the Notes has since been transferred to WBL SPO I, Plaintiff may continue the action under Rule

25 of the Federal Rules of Civil Procedure.[5] Plaintiff is therefore entitled to seek enforcement of the Notes. In addition, by its terms Note 1 became due and payable in September 2018 and was not paid in full, which constituted a default according to the terms of Note 1. A default on Note 1 constitutes a default under Note 2. After they were notified of the default, neither the Entities nor Ms. Lane paid the amounts due and owing according to the terms of the Notes.

To enforce the Notes against JLP, Plaintiff must demonstrate that JLP is obligated to pay the amounts due under the terms of the Notes. If the facts not in genuine dispute establish that Ms. Lane had authority, either actual or apparent, to bind JLP to the Notes, Plaintiff is entitled to summary judgment. Like in their answer to the FAC, the Entities assert that Ms. Lane did not have actual authority to bind JLP and did not have apparent authority to bind JLP because it was not reasonable for Plaintiff to rely on Ms. Lane's representations of her authority to bind JLP and the JLP operating agreement without inquiring further into the scope of her authority.

1.    Agency Law

"An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation." *Tercero v. Roman Cath. Diocese of Norwich, Connecticut*, 2002-NMSC-018, ¶ 12, 132 N.M. 312, 48 P.3d 50 (quoting UJI 13–401 NMRA). "The authority of an agent may be actual or apparent." *Id.* Plaintiff asserts that it is entitled to summary judgment because the undisputed facts establish that Ms. Lane had either actual or apparent authority to bind JLP by executing the loan and mortgage documents.

---

[5] Rule 25 provides: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." No motion for substitution has been filed.

2.    <u>The facts not in genuine dispute fail to establish that Ms. Lane acted within her actual authority to sign the Notes on behalf of JLP.</u>

"Actual authority is given *to the agent* by the principal in terms that are express, or in terms that are implied from words or conduct of the principal to the agent or from the circumstances of the relationship." *In re Lamey*, No. 14-13729 TA7, 2020 WL 1884189, at *1 (Bankr. D.N.M. Apr. 15, 2020) (emphasis added) (quoting *Comstock v. Mitchell*, 1990-NMSC-054, ¶ 14, 110 N.M. 131, 134 (1990) (Ransom, J., specially concurring). "A limited liability company can act only through its agents and [an o]perating [a]greement can provide actual authority for a managing member's acts." *Hudson Specialty Ins. Co. v. Brash Tygr, LLC*, 870 F. Supp. 2d 708, 720 (W.D. Mo. 2012), *rev'd on other grounds,* 769 F.3d 586 (8th Cir. 2014).

Here, Ms. Lane is named as one of two managers of JLP in the Operating Agreement. The Operating Agreement states that each manager has the "power and authority" to "borrow money for [JLP] from banks" and to "encumber and grant security interests in the assets of [JLP] to secure payment of the borrowed sums." WBL received a copy of the Operating Agreement prior to closing of Note 1 and Mortgage 1.

The Entities argue that "[o]nly Jesse Lane, as the trustee [of the Lane Family Revocable Trust] which was clearly shown in the operating agreement, could act on behalf of JLP[]." In his affidavit attached to the Response, Jesse Lane states that he is "the only person who has ever been authorized to borrow any money on behalf of JLP[] or to encumber its assets." He also states, "I have never advised anyone, or held out to anyone, that Belenda Lane ever had any authority to borrow any money on behalf of JLP[], or to pledge or otherwise encumber any of its assets." [Response, Ex. 3].

These statements do not create a dispute that precludes summary judgment because they are blatantly contradicted by the Operating Agreement, which names Ms. Lane as a manager of

JLP and gives each manager–both Jesse Lane and Ms. Lane–authority to borrow money and encumber JLP's property. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]" *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) in the context of summary judgment). Moreover, elsewhere in their response, the Entities do not dispute that Ms. Lane had authority "to borrow money on behalf of JLP[] and to encumber its property to secure loans." [Response, ¶ 19 (not disputing that the Operating Agreement gave Ms. Lane authority to borrow money on behalf of JLP)]. The Court concludes that facts not in genuine dispute establish that Ms. Lane had actual authority under the Operating Agreement to borrow money for JLP and encumber JLP's property to secure such loans.

The Entities also argue that Ms. Lane acted outside the scope of her actual authority by borrowing funds from WBL for her personal use, rather than for JLP. [Response, ¶ 19]. The evidence before the Court creates a genuine dispute of material fact as to whether Ms. Lane acted for the benefit of JLP. First, Jesse Lane stated in his affidavit that "none of the funds from [Plaintiff] were ever used by[] or benefitted APSCO, JLP[] or [Lane Las Cruces]."[6] However, he also stated that some of the funds from Plaintiff were deposited in an account held by APSCO, although this assertion is contradicted by evidence presented by Plaintiff indicating that the loan funds were disbursed to accounts held by JLP. Second, wire transfer documents presented by

---

[6] Relying on Rule 1002 of the Federal Rules of Evidence, Plaintiff argues that Jesse Lane's statement may not be considered because Jesse Lane's testimony that JLP never received any funds from Plaintiff "would not be admissible without bank statements or some proof showing the companies did not receive funds." Rule 1002 does not prevent admission of Jesse Lane's testimony on this issue: "No evidentiary rule prohibits a witness from testifying to a fact simply because the fact can be supported by written documentation." *Rodriguez v. Senor Frog's de la Isla, Inc.*, 642 F.3d 28, 34 (1st Cir. 2011) (quoting *R & R Assocs., Inc. v. Visual Scene, Inc.*, 726 F.2d 36, 38 (1st Cir.1984)).

Plaintiff name JLP as the beneficiary of the accounts to which the funds related to the Notes were disbursed. Third, Ms. Lane authorized Plaintiff to disburse $3,874.90 to the Otero County Treasurer to bring the property taxes owed by JLP on the Property current. [Exh. R]. This evidence demonstrates a genuine issue of material fact over whether Ms. Lane acted for the benefit of JLP when she executed the Notes and Mortgages. Summary judgment on this ground will be denied.

3.  <u>The facts not in genuine dispute fail to establish that Ms. Lane had apparent authority to sign the Notes on behalf of JLP.</u>

In contrast to actual authority, apparent authority arises when the principal manifests *to a third party* that the agent holds authority to act on the principal's behalf. *In re Lamey*, 2020 WL 1884189, at *2 ("A principal may be held liable for the acts of its agent if the principal clothed the agent with the 'apparent authority' to act on the principal's behalf."); *Tercero*, 2002-NMSC-018, ¶ 12 (stating that apparent authority rests on manifestations by the principal to a third party). Apparent authority to act on the principal's behalf may be manifested to third parties when the agent is appointed by the principal to "a position, such as that of manager[], which carries with it generally recognized duties."[7] *Townsend v. Daniel, Mann, Johnson & Mendenhall*, 196 F.3d 1140, 1146 (10th Cir. 1999) (quoting Restatement (Second) of Agency § 27 cmt. a (1958)). "[T]o those who know of the appointment there is apparent authority to do the things ordinarily

---

[7] *See also Roscoe v. United States*, 134 F. App'x 226, 228 (10th Cir. 2005) (stating that "[a]n inanimate entity . . . can act only through its agents" and that a limited liability company acts through its designated manager); Restatement (Third) of Agency § 3.03 (2006) (stating that "[a] principal may also make a manifestation by placing an agent in a defined position in an organization or by placing an agent in charge of a transaction or situation. Third parties who interact with the principal through the agent will naturally and reasonably assume that the agent has authority to do acts consistent with the agent's position or role unless they have notice of facts suggesting that this may not be so."); NMSA 1978, § 53-19-15 (providing that management of a limited liability company may be vested in one or more managers and that managers designated in an operating agreement "shall have exclusive power to make all decisions on behalf of the limited liability company that are not specifically reserved to the members by the Limited Liability Company Act").

entrusted to one occupying such a position, regardless of unknown limitations which are imposed upon the particular agent." *Townsend*, 196 F.3d at 1146.

When a third party deals with an agent, the third party has a responsibility to inquire "as to the extent of [the agent's] authority." *Diversified Dev. & Inv., Inc. v. Heil*, 1995-NMSC-005, ¶ 22, 119 N.M. 290, 889 P.2d 1212; *Bozza v. Gen. Adjustment Bureau*, 1985-NMCA-068, ¶ 12, 103 N.M. 200, 704 P.2d 454 ("Due diligence must be employed by a third person with an agent to ascertain the truth of the facts with reference to authority . . . ."). "Where a principal claims not to be bound by an agreement with a third party because it was made by an agent who exceeded his or her authority, the proper inquiry is whether the third party 'knew or through the exercise of due diligence should have known that [the agent's] authority was limited' to the extent that the principal claims." *Barron v. Evangelical Lutheran Good Samaritan Soc.*, 2011-NMCA-094, ¶ 16, 150 N.M. 669, 265 P.3d 720 (quoting *Comstock*, 110 N.M. at 133, 793 P.2d at 263). A third party "may not impose in the agent a blind confidence" and, "if business usage applicable to the particular business indicates to a reasonable person that the agent is not acting within the scope of his apparent or ostensible authority, it is the duty of the third person to make inquiry concerning the scope of [the agent's] authority." *Anheuser-Busch, Inc., v. Grovier-Starr Produce Co.*, 128 F.2d 146, 152 (10th Cir. 1942); *Raby v. Am. Int'l Specialty Lines Ins. Co.*, No. 203CV01353KJDPAL, 2006 WL 8442050, at *6 (D. Nev. Mar. 13, 2006) (stating that "a party cannot allege apparent authority agency where there was evidence contradicting this reliance and the party chose to ignore such evidence"), *aff'd,* 268 F. App'x 566 (9th Cir. 2008). "[W]ithout reliance that is reasonable, there can be no finding of apparent authority . . . ." *WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 750 F. Supp. 2d 1180, 1190 (D. Nev. 2010). Plaintiff bears the burden of showing that its reliance on Ms. Lane's apparent authority was reasonable.

*See Rosenquist v. Genesis Healthcare, LLC*, No. A-1-CA-36609, 2020 WL 2507655, at *4 (N.M. Ct. App. May 13, 2020) (citing *Snyder v. Stahlman Lumber Co.*, 1935-NMSC-057, ¶¶ 1-3, 39 N.M. 374, 47 P.2d 901).

By naming Ms. Lane as a manager in the Operating Agreement and specifying that managers of JLP have authority to borrow money "for [JLP]" and to encumber and grant security interests against its property to secure loans for JLP, JLP manifested to Plaintiff that Ms. Lane had such authority. *See Pitman Place Dev., LLC v. Howard Invs., LLC*, 330 S.W.3d 519, 528 (Mo. Ct. App. 2010) (stating that the plaintiff "cloaked [an agent] with apparent authority when it manifested its consent for [the agent] to act as '[m]anager' of [the plaintiff] in the [o]perating [a]greement, and gave the '[m]anager' general authority to enter into transactions such as the . . . loan transaction").

The Entities argue that JLP cannot be bound by Ms. Lane's actions because Plaintiff failed to exercise reasonable due diligence to verify Ms. Lane's apparent authority when the Purported Opinion Letter gave Plaintiff notice that execution of the loan and mortgage documents may fall outside Ms. Lane's authority, arguing that the Purported Opinion Letter, rather than giving assurance of Ms. Lane's authority, actually "gave [Plaintiff] [e]very reason in the world to [further] verify her authority." In response, Plaintiff argues that Plaintiff's reliance on the Operating Agreement was reasonable, that "nothing on [the] face [of the Purported Opinion Letter] or in its content . . . indicate[s] that it is not a bona fide attorney opinion letter" and that it was reasonable for Plaintiff to rely on it.

Since Plaintiff bears the burden of proof at trial on whether Ms. Lane had apparent authority, summary judgment must be denied if Plaintiff "fails to make a showing sufficient to establish the existence of" reasonable reliance. *Celotex*, 477 U.S. at 324. Plaintiff has not met

this burden. Plaintiff did not rely on the Operating Agreement alone as evidence of Ms. Lane's authority. Instead, Plaintiff obtained further assurance in the form of an opinion letter by an attorney. Having done so, Plaintiff could not reasonably ignore any red flags raised by that letter. *WMCV Phase 3, LLC*, 750 F. Supp. 2d at 1190 ("[T]the party who claims reliance must not have closed his eyes to warnings or inconsistent circumstances." (quoting *Great Am. Ins. Co. v. Gen. Builders, Inc.,* 113 Nev. 346, 934 P.2d 257, 261 (1997)).

The "purpose of an opinion letter . . . is to offer assurances to the creditor about the inner workings of the borrower's business . . . ." *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 385–86, 605 N.E.2d 318 (1992). An opinion letter provided for lending transactions commonly addresses whether "further corporate formalities are necessary to make the loan documents valid; . . . the documents are fully authorized under applicable law; . . . the terms, as written, are enforceable against the borrower; and . . . the proposed transaction does not violate some other obligation by which the borrower is bound." *Id.* Typically, an opinion letter provided in a banking transaction includes "the reason for giving the opinion (most commonly in satisfaction of a specified condition in the financing documents); . . . the role of counsel in the transaction;. . . the definition of certain terms; . . . the jurisdictions whose laws are covered by the opinion . . . ; any limitation on the laws considered; and . . . the scope of the factual investigation undertaken for purposes of the opinion letter." Legal Opinion Letters: A Comprehensive Guide to Opinion Letter Practice, Opinions of Borrower's Counsel § 4.8. The giving of an opinion letter may create a duty of care running from the attorney giving the opinion to a third party who relies on that opinion. *Friedman v. Hartmann,* No. 91 CIV. 1523 (PKL), 1994 WL 97104, at *7 (S.D.N.Y. Mar. 23, 1994). Because of the potential liability that may arise from an opinion letter, opinion letter authors typically are careful to delineate the

scope of their opinion, avoid making statements of fact based only on representations by their clients, state their assumptions, and qualify their opinions. *See, e.g.*, *In re Wyly*, 552 B.R. 338, 482 (Bankr. N.D. Tex. 2016) (discussing the "usual caveats" in legal opinion letters).

The Purported Opinion Letter is on letterhead of Hurley, Toevs, Styles, Hamblin & Panter, P.A., a law firm in Albuquerque, New Mexico and is purportedly signed by Thomas H. Toevs. It is addressed to Plaintiff and references the borrowers, guarantors, amount, and collateral pledged related to Note 1. The Purported Opinion Letter references APSCO and JLP as "Borrowers" of Note 1 and Ms. Lane and Lane Las Cruces as "Guarantors" of Note 1. It also referenced the collateral for Note 1. The Purported Opinion Letter stated that the author of the letter "represent[ed]," among other things, that:

(a)     "The referenced loan transaction has been duly authorized by [APSCO and JLP]."

(b)     Ms. Lane was "authorized to execute the related loan documents on behalf of APSCO[]."

(c)     "Jesse Lane, Trustee of the Lane Family Revocable Trust and [Ms. Lane] manager [sic] either are authorized to execute the related loan documents on behalf of The Lane Family Revocable Trust."

(d)     "Borrowers and Guarantors have informed the undersigned that they understand (i) the payments required to be paid under the terms of the loan from lender to Borrowers, (ii) that the Collateral has been pledged by the Collateral Owners to Lender to secure Borrowers' performance under the terms of loan documents executed (or to be executed) by Borrowers and Guarantors in favor of Lender, and (iii) that Lender has the right to foreclose on the Collateral in the event of default by

Borrowers under the terms of the related loan agreements, and/or default by Guarantors under the terms of the related guaranty agreements."

(e)     "After inquiry by the undersigned, Borrowers and Guarantors have informed the undersigned that Borrowers have the capacity to make all payments required under the terms of the related loan agreements on the basis of existing and projected revenues over the term of the loan evidenced by the loan documents."

(f)     "In making the above representation the undersigned acknowledged that Lender is relying on same in connection with this funding of a loan to Borrowers on or about the date first written above."

The Purported Opinion Letter contains clues that it may not be genuine. Perhaps the most obvious clue is that no opinions are given in the letter, only "representations." The purpose of an opinion letter, as the name suggests, is to render opinions. In addition, while the letter includes a representation that Ms. Lane "is authorized to execute the related loan documents on behalf of APSCO" and the Lane Family Revocable Trust, it does not include a statement that Ms. Lane is authorized to execute the loan documents on behalf of JLP, even though JLP is named in the letter as one of the borrowers on Note 1. Another immediate clue, apart from the substance of the letter, is that the Purported Opinion Letter contains numerous typographical and grammatical errors, which are uncommon in letters prepared by law firms.

Most importantly, the Purported Opinion Letter does not contain the customary components of an opinion letter. Specifically, it does not:

1.     include a salutation, such as "Ladies and Gentlemen,"

2.     name the Hurley firm's client or address the scope of the Hurley firm's representation,

3.          define the investigation conducted by the Hurley firm or the documents upon which it relied,

4.          include the assumptions the Hurley firm made,

5.          provide a statement regarding the governing state law,

6.          render opinions (instead it makes representations), or

7.          state any qualifications or limitations with respect to the representations.

Finally, the Purported Opinion Letter includes a representation that according to the borrowers' existing and projected revenues over the term of the loan the borrowers will have the ability to repay the loan. That type of opinion is highly unusual in attorney opinion letters.

WBL apparently had the Purported Opinion Letter in its possession before transferring the funds related to Note 1 to the designated account and could have delayed the wire transfer after review of the Purported Opinion Letter. The Purported Opinion Letter is dated Friday, September 23, 2016, the same date that Ms. Lane executed Note 1 and Mortgage 1. The wire transfer document related to Note 1 states that it was created at 2:16 p.m. EST on Monday, September 26, 2016. As to Note 2, Ms. Lane executed the documents related to Note 2 and Mortgage 3 on November 14, 2016. There is no opinion letter related to Note 2 in the record.

While it is obvious to the Court from a review of the letter that the Purported Opinion Letter may not be a bona fide attorney opinion letter, as no competent attorney would issue such a letter, the question before the Court is whether the anomalies in the Purported Opinion Letter would have given notice to a reasonable lender that it should make further efforts to verify Ms. Lane's authority to execute the Notes and Mortgages on JLP's behalf. No evidence was presented on this issue by either party. Thus, Plaintiff has not established that it was reasonable for it to rely on Ms. Lane's apparent authority despite the potential warning signs in the

Purported Opinion Letter. Plaintiff's Summary Judgment Motion, therefore, must be denied. *See WMCV Phase 3, LLC*, 750 F. Supp. 2d at 1190 (holding that questions of fact as to whether a party's reliance on apparent authority was reasonable where neither party adduced evidence on this issue).

## C.    Facts Established in This Case Under Rule 56(g)

Relying on Rule 56(g), Plaintiff also requests that the Court, if it does not grant partial summary judgment to Plaintiff, enter an order establishing in the case all facts that the Court has determined to be undisputed for purposes of ruling on the Summary Judgment Motion. Rule 56(g), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056, provides: "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating  the fact as established in the case." Whether to grant a request to deem facts as established under Rule 56(g) falls within the court's sound discretion. *See* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2737 (4th ed.). The Entities did not oppose Plaintiff's request.

The Court will grant Plaintiff's request to the extent it relates to undisputed facts necessary to resolution of Plaintiff's Summary Judgment Motion. The facts set forth in the section of this opinion entitled "Facts Not in Genuine Dispute" will be deemed established for all purposes in this adversary proceeding, including for purposes of trial.

## IV.    CONCLUSION

Genuine issues of material facts persist as to 1) whether Ms. Lane acted in whole or in part for the benefit of JLP, and therefore within the scope of her actual authority, when she executed the Notes and Mortgages and 2) whether it was reasonable for Plaintiff to rely on Ms.

Lane's representations of her authority after it received the Purported Opinion Letter. These factual disputes must be resolved at trial. In a separate order, the Court will deny Plaintiff's Summary Judgment Motion and grant in part Plaintiff's request that the Court deem established for trial the facts not subject to genuine dispute in this Memorandum Opinion.

_____
Robert H. Jacobvitz
United States Bankruptcy Judge

Date Entered on Docket: August 5, 2021

Copy To:

Robert R. Feuille
Counsel for Plaintiff
PO Box 99123
El Paso, TX 79999-9123

Shay Elizabeth Meagle
Counsel for Plaintiff
Moses, Dunn, Farmer & Tuthill, P.C.
P.O. Box 27047
Albuquerque, NM 87125-7047

Richard A. Hawthorne
Counsel for APSCO, Jesse Lane Properties, and Lane Las Cruces
1221 Mechem Dr Ste 2
Ruidoso, NM 88345-7224

John D. Wheeler
Counsel for Defendant Belenda Lane
PO Box 1810
Alamogordo, NM 88311-0600

R Trey Arvizu, III
Counsel for Debtor Belenda Lane
PO Box 1479
Las Cruces, NM 88004-1479